Ms. Deutch, good to have you here. Thank you very much. Good morning, Your Honors. Ruth Ann Deutch on behalf of the members of the Hunters Brook community. The largest residential arson in Maryland history, racially targeted to injure my clients, would not have occurred but for SSA's allowing unfit employees to conduct its business. You mean racially targeted to injure property that your clients would at some time actually own? It's our position, Your Honor, that the arson was a means to personally injure them. So the destruction of the property was not the end of the tort. It was the way the tort was conducted and the actual tort was the infliction of emotional distress upon our clients. On your specific clients? Yes. They knew your clients? They had... Or they simply knew that they were African-American? Both. So... And they wanted to harm your clients specifically? Yes. They burned the houses down in order to prevent our clients from moving into the neighborhood. The words black jokesters were spray painted on the dumpster. The district court made a finding that there was more than sufficient evidence of racial animus. The claims against the individual defendants for infliction, intentional infliction of influence all eventually played out. But there is enough there to go to the jury on the intentional targeting of my clients to cause them emotional injury. I'll let Mike closer to you a little bit. I can't hear very well. Sorry, I'm shorter than the other people. Tell me about the property interest they have in the property. As I understand it, this development is by a developer who's building houses. Are they pre-sales? They had executed sales agreements with all of my clients at the time the arson occurred. But our position, again, is that the property interest is a bit of a red herring here. The Maryland case... I want to know about that. Okay. Well, it's at the beginning of the second volume in the JA is a sample sales agreement. At the time the arson occurred, all of the... Let me just cut right to it. Did your clients have any specific property interest in the property? I think you could argue they had an inchoate property interest in the sense that they had an agreement to buy. They had at least 5%, sometimes more, in escrow. And it would have been executed timely if the houses had not been destroyed. It was postponed. But the issue here is not only the destruction of the homes. The homes have been rebuilt, but the emotional scars and trauma of the arson remain. And in using the very phrase, conducting the business of the agency that the common law rejects as too broad for scope of employment liability, Maryland Security Guard Act conditions agency receipt of a license to operate a security guard agency upon receipt of a heightened responsibility for employee conduct. And it makes sense, because as the facts here well demonstrate, security guards that are put in a position to protect the public with the trust and authority and access and opportunity that position affords are also uniquely positioned to do harm. The Maryland Act, the Security Guards Act, did it in fact codify the common law? No, it did not, Your Honor. And I think there's a few critical missteps in the district court's decision on that point, as well as in my friend's analysis of the question. First of all, there's one certainty here, that if you look at the common law cases, the phrase conducting the business of the agency does not equate to scope of employment liability. And that was the big issue, right? That is the issue. Whether the scope of employment means something different. Something less. I think. Exactly. And conducting the business, I mean, the oft-quoted passage. When was that act amended, 86? That was when they changed the language from the earlier versions of the statute. The statute, in some form, has been on the books since 1951, which interestingly is two years after the 1949 Apex decision that the Stuart Warner court responded. Am I right? It was changed in 86, and then then. It was changed in 86 to read. Conducting the business of the agency. Before that, it read. It read. Let me give you the exact quote, because I don't want to. The holder of any license issued under the provisions of this subsection may employ to assist him in his work and conduct of his business as many persons as he may deem necessary, and he shall at all times during such employment be accountable for the good conduct in the every person so employed. And then at the end of that section, it goes on to say the employer shall be responsible for the actions and conduct of all employees in connection with such employer's business. So the earlier versions, which the revision in 1986, in language actually used by the district court to say it codifies the kind of. That's the earlier version. That was 51 and 79. 86, they changed to conducting the business of the agency at the time where the courts in other jurisdictions were beginning to divide, and some courts were reading this good conduct in our language as narrowing liability. The Maryland legislature changes it to this more open-ended phrase, conducting the business of the agency, and which the common law cases, scope of employment cases, say the simple test for determining whether an employer is liable under scope of employment is not whether the employee is conducting the master's business, but whether the employee is acting in furtherance of the master's interest or to actuate his purpose. And what the district court did was conflate conducting business with furthering purpose. And our position is that this was a critical error. You can. This outfit was hired to protect this housing project. To protect the housing project. Like a, your position is they sort of had like a position of trust. They had a position of trust, they had access, and the Maryland. And they turned against their, who they were supposed to be protecting. Right, and under the common law backdrop, which informs the interpretation of the statutory cost of action as well, employers with a duty to protect, and this is cases like Henley, Kramer, Evans, that are all cited in our group, the duty to protect of an employer in this line of work extends to members of the public that the employee is reasonably likely to come into contact with. And here the homebuyers are more than random members of the public. They are business invitees of the developer. They are regularly on site. And under the common law, it, you know, the, my friend on the other side makes it seem like the statute is a drastic expansion and departure from the common law. But these sorts of non-delegable duties are quite common in the common law in exactly these sorts of situations where an employer has a duty to protect people that its employees are likely to come into contact with from harm. Now, Judge Williams said that you were after strict liability. Is that true? Well, in the sense that vicarious liability is itself a form of strict liability where you impute the servant's fault to the master without looking at the fault of the master. So in that sense, yes. Although here, and in the Stuart Warner case, and in the Simmons case, which are the other cases that have interpreted the statute the way we proposed the Maryland statute be interpreted, there was also clear evidence of employer breach as we have. So we have direct negligence counts here as well. But the point of the statute and the point of allowing the shortcut, if you will, is that it's appropriate in this highly regulated age, injury where it's a protective service and where the risk of the public of employee harm is exceptionally great, impose this kind of liability, where if a bad act occurs, it's the employer's responsibility to compensate. And that's part of the cost of business, and it's meant to ensure that the employer takes every precaution against allowing these things to happen, which obviously was not done here and which the appellee. And five of them were convicted of federal crimes? All of them were convicted. And they went to federal penitentiary? They all went. For about eight years, four of them who are out already, those were the four that pled. Walsh, who was the ringleader, was convicted after a jury trial and is in the midst of serving a 20-year sentence. And their positions were merely guards, or some of them had supervisory positions? Well, only one of the people convicted was a guard, and that was Speed. So Walsh, Parody, and Evans were co-conspirators. And then Fitzpatrick was never charged. He was the one that abandoned his post. What's your view of the state of the common law vis-a-vis the statute? Where do you want to be? In terms of which way you reverse? We might certify the question. So where are you? Well, we think you have enough to reverse without certifying. Obviously, you might think that unresolved issues of Maryland law. The court of Maryland, that's the court of appeals, has never answered this question. Correct. And everybody agrees with that. And Judge Williams agreed with that, I think, in his opinion. And you're still interested in that? We would be delighted to have you reverse that right, because we think we're in the heartland of the statute. But we would be more than happy to have you certify, yes. And certify the statutory question. Is there just one question that would be certified? Or are there multiple questions to be certified? Do you all lay out what they would be? Is that somewhere in this record, what the supposed questions would be? In our motion to certify, we proposed one version of a question to certify in the statute. On appeal, we did not rework that. You're welcome to use that or reformulate in the certification orders. I'm asking the lawyers. We get help from lawyers on something like this. The best argument you got, I'll make it for you, for certification is we need to get it right. The answer to the question, rather than guesswork. The answer to this question, if there is a proper question, needs to be answered properly. To be answered properly, it needs to be framed properly. If there are more than one question, they need to be framed properly. So we defer to the court if it wants to review it. But if certification is going to be considered, we need to get assistance from the attorneys.  Judge Williams said it was too late. The case had been lingering around too long. So instead of certifying, we just thought we'd go ahead and answer it. In which case, if that's the controlling factor, we need to say affirmed or reversed. But if we want to be 100% right and apply Maryland law, which applies here, I think, then the best source of Maryland law would be the High Court of Maryland. That would be your argument, I think. Yes, we agree, absolutely. And the one thing you can't do is affirm when Maryland law is open on this point and the ruling below effectively reads the statute out of any meaningful existence by saying it does no— He said it means the same as the common law. Yeah, and does no more than treat a security guard agency like any other generic employer under the common law, which it clearly does not do. Because it wasn't in their scope of their employment to go around burning houses that they were hired to protect. No, but they were taking advantage of on-the-job opportunities. So Speed, while he was exercising his authority to let people in or not, let in the co-conspirators and worked with them planting the inflammants in the houses. Speed, while he was doing his patrols and making his rounds of the houses, planned out a map of the neighborhood, which he shared with the co-conspirators. Speed identified the race of the occupants. All of these on-duty acts that indisputably occurred while conducting the business, in the sense of while performing the job, while wearing the uniform, while having the access, while having the opportunity, allowed the arson to occur and do maximum harm in minimum time. And the idea that because these acts were done on duty, but the arson occurred while he was off-duty, the statute didn't cover is not really understandable to me. It's like saying that if he had planted the bomb while on-duty and then somebody else had lit the match while he was off-duty, that there would be no employer liability under the statute. In terms of certification... In answering that question, does this hiring issue come into play? On the statutory question, no. If you want, it's possible to also sort of the negligence... I'm asking you. Yes, you could. No, that's the whole point of the statute, that you don't have to then do the extra step of analyzing the breach. Because the very fact of the employer breach... Whether the company would be liable, which is your position, that the negligent hiring would come into play anyway? Or reckless hiring? That is a separate liability count that we are alternative grounds for... You're not appealing it, are you? Yes, we are. You're just appealing this one thing? No, we're appealing the statute and we're appealing the direct negligent counts against SSA. And on that, the only thing I'd like to say, and I'm happy to unpack it more on rebuttal, is that they have narrowed their appeal to the sole question of whether the harms we're alleging are cognizable under negligent hiring training supervision, although they carefully avoid mentioning the term negligent hiring training supervision or unpacking the elements. And Williams, the case cited in our brief, demonstrates that if you prove both torts, we're not eviscerating intentional infliction of emotional distress. We're saying you have to have the breach of duty to place or fail to supervise an employee in a position to do harm, and then that employee meets all the elements of IAED, then you're liable to collect for emotional damages. You've got a red light on you. Mr. Bryant, good to have you here, sir. Thank you, Your Honor. May it please the Court, Gary Bryant for SSA. Appellants have cited a number of cases to support the argument that Maryland law should be expanded to allow them to recover emotional distress damages from destruction of property in the Hunters Brook neighborhood. The problem with their authority, and you can look at every single case because I know I have, all of these cases which recognize a claim for emotional distress damages, and that's all we're talking about is a claim for emotional distress damages, have one of two things in common. All of those cases involve individuals who were there, they witnessed the destruction, sometimes fire, sometimes explosions, sometimes car accidents that run into homes, and in every single one of those cases they fear for their lives. And the Maryland courts have said there are circumstances in which if you're in the zone of danger and you have damage to property, you can get an emotional distress damages claim. And then they have another group of cases, and all of those cases are along the lines of the exception listed in Ziegler, where if you have property damage standing by itself, the rule in Maryland is you don't have an emotional distress damage claim. You've got to have more than that. And that Ziegler case, Dobbins mentions it as well, says what you've got to have is the intent element. And if you have the intent element and damage to property, then you can have the emotional distress damages claim. What's their interest in the property to be able to claim these damages anyway? The second exception, where if you injure property, in every single case in which property has been injured, it has been the property of the plaintiff, of course. There is not a case in Maryland that I know of, certainly none that have been cited, and I don't know a case in the country in which someone says you can have an emotional distress damages claim when someone injures someone else's property, but you have some sort of claimed interest, whether it's a contractual, I want to buy it someday, or whether it is a personal emotional attachment. There are no cases. And Maryland law has never held that when you're not in the zone of danger, you're not sitting there fearing for your life, and incidentally, there were two property owners who were in the neighborhood when the houses burned down, but as it turned out, the arsonists targeted empty houses because they didn't want to hurt anybody, and those two people testified, Rooker and Potts, and it's in the record, we looked around, we saw the fire, we thought propane tanks were going to explode, those claims survived. Why would it not make a difference that this is a hate crime type matter? This is not simply an act to do some damage to property, but at least from the allegations that are made, the impetus here is to go against these individuals because of their race, because you don't want them there, and so you are taking acts to indicate that your security is something you have to be worried about. To burn someone's house down is pretty serious stuff, or to burn down a house that you potentially would live in is pretty serious stuff. We buy these houses, and you kind of want them comfortable when you come home. A lot of places you don't feel safe, but when you get home, you want to be safe, and if you're buying in a neighborhood and you've got a group of people that's so brazen that the very security people are the ones who are burning it down, is that not a different type of connectivity than the garden variety case where simply someone damages property and says, oh, I've been hurt because the property's been damaged? Yes, and those people need to go to jail, and they did, and the people who owned the property got it destroyed, need to be compensated, and they were. I think what we're missing here is these are people who were sitting in the homes they actually— They got contracts to buy the home. They got contracts to buy the home. Why isn't that an interest in a property? It is. It is an interest in a property. And they have claims against the developer. But you say they have to prove some kind of intent, and a hate crime is intent. You've got to have a—if they went to jail, they had to have some intent, and the question goes back to that statute. They're working for your client, and what's it mean? Well, to begin with, the district court concluded, because they did not have a property interest, they had a contract to acquire. I thought you said they did have a property interest. I said what they had was a contractual interest to buy the property. But that's an interest. Well, it's an interest, but it— But you can get specific performance on it, and under my recollection of property law, I mean, I'm no expert on it at all, but I thought if you got a contract to buy a house, you can get specific performance, right? If the other side tries to get out. I think you can, Judge. But that's—the risk— Well, you've got enough of an interest to go to court. You can lawsuit and win. The risk of the fire is on the developer. The risk of the fire is on the developer. The risk of the fire from the guard who intentionally burns it down because he's heard that a black man and his family is going to move in there, is that on the developer? No, no. Of course not. Why wouldn't it be on the people that hired the guard? My only point, and— I mean, on the people that hired the guard and said they're going to check them out and do background investigations and didn't do it. Right, and— That's more than negligent hiring. Well— That's more than negligent hiring. That's absolutely reckless hiring. Well, Your Honor— And that is intent. Right, and that was never alleged. That was never proven. That's not the issue on appeal. The issue on appeal is, is it their negligence that they can be liable for? And the law in Maryland is clear. If you are negligent and it results in property damage, you have no claim for emotional distress damages. It's reckless and it results in property damage. Well, I think that the Ziegler case says— Reckless conduct results in property damage. Ziegler says fraud, and I believe it says malice. And likewise. It may. It's the case you all cite. Right. The word likewise in there. Why wouldn't recklessness be likewise? Well, I don't know if recklessness would be enough, but I know that the district court— and no, recklessness is not what they're alleging on this appeal, that our guy was reckless in— SSA was reckless. But let me get to the intent element, because— We're letting these people get out there to guard the property after they've been hired. I mean, they're a trustee. Don't they have some elevated— they're like private policemen. You've got to trust police officers in this country. There's no question they have to get— You hire a guard. What if you hire a guard to protect someone's person, and then he shoots the person he's supposed to be guarding? They'd have a claim. And they haven't done the background investigation on the felon. No one, no one, not SSA, not the court, concluded that SSA wasn't negligence, that SSA didn't do something wrong in not conducting the background check. They wouldn't have found arson in the background, incidentally. They wouldn't have found arson. Quite frankly, I think that— I don't even know if they'd find criminal activity in the background if they had done Speed's background check. They just didn't do it. And that's where the negligence came from. I think that what we're doing is we're assuming that, while he burned the place down, clearly they were reckless in hiring him. I think that he had been—he had had some sort of mental issues early on in his life. That's what my recollection is. I didn't try the case, but that's my recollection. They found out that they fired him. Right. Previously fired him for misconduct. Yeah, but not for this sort of thing. And then hired him back. Not for this sort of thing. Nobody argues that SSA wasn't negligent. They spent half their briefs saying SSA was negligent. SSA was negligent. They know that under Maryland law, they've got to get the intent element to SSA. Now, Judge Williams says, if they don't own the property, it doesn't matter. The intent element is irrelevant if they don't own the property. You have to own the property. But if this court wants to say, we think Maryland law means if you don't own the property— We don't necessarily want to say anything except what Maryland law is. Right. Because we're obliged to follow Maryland law. I agree. But we need to know what it is. I haven't seen a case in Maryland, and I don't know of a case in Maryland in which they've said, you get an emotional distress claim when you don't own the property and all we have is property damage. That's—they're saying, tell us Maryland law means that. There aren't any cases in Maryland that suggest that. And every single case in Maryland that deals with damage to property— The fact that you, at least in terms of allegations, that you intentionally destroyed this property, burned it down with an intent to try to threaten or to do harm to individuals who you did not want there. Okay. It wasn't the developer they didn't want there. That's right. It was these individuals. The reason they burned the house down wasn't because it had nothing to do with the developers in it. They're burning it down because of these individuals. That is what Judge Williams assumed. The question is, does Maryland law extend that liability beyond the common law in that instance? All right. You're saying you, you, you, you burned the house. Obviously, it is an off-duty employee that gathered together with a number of other folks that burned the house down. It wasn't on duty. It was one security guard from SSA that joined up with a bunch of arsonists and committed this criminal act. I think what your real question is, how do you get that intentional act attached to SSA? Clearly, SSA isn't going to go burn down the property that it's charged to possess. SSA acted recklessly in letting him be a official. That's not a… In giving him a badge. That is neither in the record nor alleged on appeal, Judge. Plainly in the record. You just told me they didn't look at his background after they said they did and they gave him the right to go out there and gave him the responsibility of protecting the place. Well, I… And he got with these other characters and burned it down. The record is what it is with regard to what SSA did. And on this appeal, they don't even say… We make the facts and the light most favorable to them. Right. I understand. We don't make findings of facts. The issue was, the issue that they argued is two things, Judge. SSA's negligence they're responsible for, and the judge said in Maryland, if negligence results in the destruction of property, you don't have a claim. Then they say SSA is intentionally liable because they are absolutely responsible for the act of speed. And that's where I'd like to spend the rest of my time on that because I think that's their primary argument, is that the Maryland Security Guard Act makes speed absolutely… I mean, makes SSA absolutely liable for Speed's Act. Speed's Act was intentional. It was malicious. It was criminal. It meets all of those Ziegler standards that would give rise to a mental distress claim if you own the property. But assuming we're going to satisfy that if you own the property prompt, the next question is, can this be attributed to SSA? And we think that Judge Williams correctly concluded that the statute doesn't attribute it to SSA because to say that that act can be attributed to SSA reads something out of the statute. The statute says that the agency is responsible for the acts of the employee while the employee is conducting the business of the agency. And they say, well, the while is temporal. All they need to be is on duty. The business of the agency is to protect the home. Yes, it is the business of the agency to protect the homes, absolutely. And Speed was the employee hired to protect the home. He was. And he got together with these other characters and they burned it down. Off duty. He got together off duty with these other characters and burned it down. That's exactly what they did. And Judge Williams, I think, correctly concluded, how in the world can you say that conducting the business of the agency includes getting up with a bunch of arsonists off duty and burning the home down? A strict liability exists for the owners of the property. If there's someone who, a homeowner, has hired this agency for security purposes and this results, does the Maryland Security Act then say, does that better in terms of the position of the other side to say, well, you know, we're not going to ask you about all these common law negligence principles here. You brought this security agency in here and regardless of what the reasons were, these people depended on you for security and you violated this and you're just liable. Well. That sound unreasonable? I mean, if you hire a security agency to work on your house, and I'm just taking that, I know that's not this case. Yeah. But I want to establish the threshold that the position of strict liability, in that instance, doesn't sound so unreasonable if it is a homeowner or here the developer, I guess. If the developer was bringing this action, that, you know, you don't hire a security agency to come in and then I got to worry about, you know, these people are nuts or whatever's going on. I hired him because that's security. I don't want a security for the security. I understand. And so Maryland says if you're going to call yourself security and you violate security, you're just liable. Well, whether it's strict liability or not, they did sue and they did recover. Well, no, no. I want to know, at least you see what I'm going through. Against the developer. Because I want to know does it exist in that instance with the owners of the property or with the developer? With the developer, I don't think strict liability exists, but they do have a contract and they did allege negligence and they did collect. Then common law principles then in terms of what the liability would be. I don't know that under the common law anyone would be strictly liable. I think they still have to show negligence. That's why I ask, is it different in common law? You mean? The nature of the liability that exists in that situation, is that different than just common law negligence? Oh, I don't think so. I don't think it's any different. Like anybody else then. So you don't, in other words, under that then you don't need a Maryland Security Act. What you're saying is you hire someone as a security agent for your house, then you just get whatever damages anybody else would get for negligence. There's no hyphen liability here that exists. Well, I think you still have responding. That's not true though. I mean, you've got the law that has been in Maryland and Virginia and many other states that are in the Fourth Circuit, which have these theories of respondean superior. And what Judge Williams concluded is that's really what this does. It codifies the common law. So the security officers or security agencies, you're saying just like any other corporation, there's no additional rules that apply to them at all. Even though they hold themselves out as protecting people, they don't have to do it. Well, I haven't reviewed the statutes applying to security agencies in detail except with regard to their liability for the conduct of the employees. This is an employee that burned the place down off duty. And even those handful of cases that are cited in other jurisdictions which hold the agency responsible for the acts of the employees or their liability for failing to keep the place secure or causing it to be not secure. Well, that's the negligence claim. I mean, think about it. Think about it. You hire someone to act as a security agent of your house, and that's the danger you just brought in your house. All of this has to be seen in the context of giving rise to a particular type of claim. The developer had his property damaged claim, and he brought it. And my understanding is those claims had to get resolved. The people who were in the neighborhood brought claims against SSA saying, you were charged to protect us. You're a security guard. How can you let this place go? They got claims, and those claims proceeded. We're talking about these folks here, whether those claims are not on appeal. The only question is whether these plaintiffs have claims. And under Maryland law, somebody who's sitting in their home across town and learn on the news that homes that they don't own, they do have a contract, but they don't own, gets burned down under Maryland law. That has never given rise. Having them under contract. What if they had it under contract, or I have it under contract, and I'm supposed to close the next day, and somebody goes out there, the security company that's been hired to protect it, goes out there and burns it down the night before I'm disclosed because they don't want me moving in there because I'm the wrong color. Maryland wouldn't protect me. I wouldn't have a tort claim. Again, the question is, would you have an emotional distress damages claim alone? I would say no. And the answer is no, because you don't have a property interest. And the only act we're talking about. My property will close the next day, and I've been under contract, and I've put up $5,000 or $10,000 of escrow money, and I've got the mover hired, and my family's ready to move, and we're just thrilled about moving into that nice development. And the security company people that's been hired to protect it, go out there and burn it down. Do you believe that the— Your Honor, go ahead. Do you believe—that wasn't a question, that was a comment. Okay. Go ahead. That's all right. I can answer comments too. That was more of a comment than a question. Go ahead. Do you believe that the statute in question codified the common law and that we should use the long-held definition of respondent superiority? Yeah, I think that what this did is codified the common law, yeah. And I think that's what the judge did. He used respondent superiority. My follow-up question to that is, I thought the construction rule in Maryland is that unless the Act specifically says we're codifying, it's not codifying. Well, Your Honor, there's a couple of things I haven't mentioned. Number one, my understanding of Maryland is that if it's going to change the common law, it's going to say that it changes the common law, and that'll be clear. I mean, when the common law gets changed in Virginia or anywhere else, in Maryland, practically anywhere, everybody knows about it a long time ahead. And it can't be repealed by implication. That's right. That's exactly right. And there's no indication in the statute that the legislature intended to repeal the law. Right. That's right. And, in fact, the chairman, the committee chairman, this is what he said when he introduced this bill. The proposals, and I'm quoting, the proposals under the bill find their basis in actual law and practice and do not deviate substantially from the current law as it is now applied. There's just nothing in this statute that suggests that we're changing things. And that's what Judge Williams hung his hat on when he said, look, I've got to read while conducting the business of the agency to mean something. And I'm looking at the legislative history, and they really, and the appellants really hung their hat on. The legislative history said that the people went in there and said, well, they're trying to change it from scope of employment and hold us straight liable. If you adopt this language that's here, it's going to make us strict liability, and the legislature rejected that. What the court basically said is, you've got a lobbyist that's coming to a particular person saying, we like this language better. Argue the best way you can to get that. The lobbyist, what was it? It was the lobbyist for the security companies. I think so. For your client. Right. What the court says is, silence in the face of a proposed amendment can mean anything, and if you've been involved in the law. Legislative history is pretty hard to get a hold of. I'll have to agree with that. Yeah. But now, before you sit down, what do you think about Judge Boyd's question about certification of the issue or issues, if there are more than one, to the high court of Maryland? Well, I only know of one issue, and that is the scope of what this act means. I mean, no other issue has been, they've not requested in this appeal that any other issue be certified. Well, we don't have to be requested in this appeal. It don't have to have been requested in the district court. We can certify sua sponte. Yeah, you can certify everything. I know. This court can certify whether you lawyers want us to or not. Right. And the high court of Maryland doesn't have to answer our question, but we can ask the question. And if we want to, before we ask the question, we can ask the lawyers if they have suggestions. Right. And so I'm just asking you what you think of that. Right now, I know that there was an issue down before Judge Williams, and he declined to certify and said it was too late. Right. Said it's too late to certify. The case has been around too long. We want to get it over with. We might say, one of us might say, or more of us might say, well, maybe it has gone on a while, but it also is important to get it right. Right. So if we want to ask a question or X number of questions of the high court of Maryland, do you have any suggestions that you know of right now? All right. And I understand all of that, and that's why I didn't argue abusive discretion in failing to certify, because you guys can do whatever you want. If you're going to send this to Maryland, I think that there's several issues that have to be resolved. That just puts it back on the floor. Right. That puts it over there temporarily, and then we have to deal with it when it comes back, you see. We might have to get $2 to argue it again. And these are questions that if I wanted to get this thing taken care of and not have to be back arguing another issue, my question would be, does Maryland, the Security Guard Act, make the security guard company absolutely liable such that intentional acts are imputed to them? Acts like this, and I'm talking off-duty acts, and the extent to which those off-duty acts would rope in knowledge that they may have gained on duty, because there are many cases that interpret acts just like this that says, it doesn't matter. It's a long question. I know it would be a long question. What does that act mean exactly? But the other question that in my mind has to be answered is, do we have a bright property line or don't we? Because your questions, Judge Kings, are good questions. How far down the line of, well, you know, I like that house. Somebody burns it down because you like it. Well, no, I contract for it. Well, I'm four months into closing. I've gone in and actually gotten the key, but I haven't signed the closing documents. Where does the line end? I think Maryland, we believe Maryland says, you don't have emotional distress claims arising out of damage to property unless it's intentional and you own it. And those two questions, I think, especially the and you own it, the property right question. You'd certify a couple of questions if you're going to certify. I would uphold Judge Williams' opinion, but if I had to certify it, I'd certify a couple of questions. No, you're not giving away anything. Yeah, I think so. You're not giving away anything by answering my question. Yeah, I think so, because you still have to answer the question of, do you have an intentional infliction of emotional distress claim when you, the only act is the property damage. They weren't within the zone of danger. So the only question is, do you have that when you have a contract to buy property as opposed to when you have no interest in the property? Thank you, Mr. Bryan. We appreciate it. Ms. Deutsch. Thank you, Your Honor. A few points. First of all, in terms of a certified question on the statute, we would propose something along the lines of, does the Maryland Security Guard Act expand security agencies' vicarious liability for the tortious acts of its employees beyond the common law scope of employment, i.e., without regard to whether the on-duty acts are in furtherance of the employer's purpose? So this detour about the off-duty acts not coming in under the statute, I think, is irrelevant. That's not relevant to the legal question here. We're asking for an instruction that, with respect to the on-duty acts of Speed and of Fitzpatrick, whether they foreseeably resulted in the arson that occurred, like the bomb being planted later and being ignited, being planted earlier and being ignited later. That's a foreseeability question for the jury. And it's interesting here. All this talk of we didn't allege recklessness, they do not dispute in this appeal breach, foreseeability, causation. All they're talking about is the cognizability of harm. And if you want to certify another question, you could certify the question of, does the negligent training and hiring and supervision recognized cause of action in Maryland law allow for employer liability for employee infliction of emotional distress? We believe it does. We believe the Williams case establishes that, but that's a federal district court decision that refused to dismiss the complaint and then the parties settled after. We've found two other cases where the possibility of such a cause of action has been recognized, but which didn't satisfy the elements of either negligent hiring and training and supervision or intentional infliction of emotional distress. But we believe that if you satisfy both those high hurdles, which our facts do, then recovery would be allowed without regard to property ownership, because you would need, what you would need would be the duty of the employer to protect the plaintiffs as members of the public who are reasonably expected to come into contact with the employer. Just like in Henley, a vandal was protected against the physical assault of a security person charged with guarding the premises. No property interest, no contract, not even supposed to be on the property, but someone reasonably expected to come into contact with the guard. There it was a physical assault. But the cases and the logic make no distinction between an emotional assault, which was what this was. The arson was an emotional assault on our plaintiffs. And we meet the requirements there of the Torches Act being an intentional infliction of emotional distress. District court found that the severity of the emotional harm was there. The outrageousness of the act is uncontested. In fact, they hide behind the outrageousness in disavowing scope of employment liability. Intentionality is alleged and not disputed. And so then the only thing left again is causation foreseeability, and that's for the jury. Can you prove the intent or the malice in Maryland by proving conduct was reckless? Yes, we can. Although we haven't appealed the dismissal of the direct intentional infliction of emotional distress against the agency in hindsight, which is 2020. I think we should have left that in the case live because I think you're absolutely right. Your honor, this was reckless conduct. And I'm talking about recklessness coming into contact, coming into context of either of the, of what you have a fee. Well, certainly gross negligence and recklessness in terms of the hiring and rehiring of speed. And in addition to what they mentioned, there was a, an act of violence in high school. There was a juvenile detention. There was a tire squealing drive by a customer referencing back to your previous case. And that was the incident that he was fired for. There was an incident. This is a J four 66 of kicking a door down when he was trying to help somebody in, you know, who was locked out. This was an erratic and undependable person who walked away from his post and was fired because of that, who was the two nights before the arson, not at his post. That was the night that the. Yeah, it was between August and November. So a little bit more than that. And it was because of saving money. They didn't want to pay overtime to other, other new employees. And the same thing with Fitzpatrick being authorized to abandon his post early. The record is open as to whether he was part of the conspiracy or not, but it was, why is it open? Because there's not a finding on that. What did you all, there's no, there are no findings. And he was not named as a defendant. I'll take his deposition. Yes. Well, we have a declaration from him, a signed declaration. He's physically incapacitated. He had a stroke and he's not very well. His co-conspirator. No, we do not. We do not. You don't have enough evidence to claim that he wasn't taking the light was favorable to you. Correct. You don't claim he's a co-conspirator. Correct. But his, a bad, he did inform speed at three in the morning, about an hour before he left it, that he was ill and was planning on leaving early. And that knowledge put the, the train in motion for the events to, to occur. And, and the reason that he was, he left even earlier than he normally did, but he always left before his shift ended. Why again, to save SSA money, because they only had one light that they had to share. And he, and so he was allowed to leave early to return it on the clock. As we see it, your honor, if I may, one more sentence, there are two options here, either reverse, because we are comfortably within the heartland, but for conducting the business of the agency, this arson by speed and the way they conducted the businesses. One of the other jurisdictions say responsibility for conducting the business is liability for poorly conducting the business, but for, but for these acts by these guards, this arson wouldn't have occurred. The statute exists to do something other than treat security guard agencies like generic employers. If you don't agree that you can reverse directly at the minimum, please certify the question. Thank you very much. Thank you, miss. We'll come down and greet council and adjourn court. Sunny die. This honorable court stands adjourned. God save the United States. This honorable court.
judges: Robert B. King, James A. Wynn, Jr., Henry F. Floyd